No. 23-12469

In the

# United States Court of Appeals
## for the Eleventh Circuit

City of Atlanta,

*Appellant,*

v.

Lisa Baker, Jacqueline Dougherty, Keyanna Jones, and Amelia Weltner,

*Appellees.*

On Appeal from the United States District Court for the Northern District of Georgia, Atlanta Division.
No. 1:23-cv-2999 — Mark H. Cohen, *Judge*

## BRIEF OF THE STATE OF GEORGIA AS AMICUS CURIAE IN SUPPORT OF APPELLANT

Christopher M. Carr
  *Attorney General of Georgia*
Stephen J. Petrany
  *Solicitor General*
Logan B. Winkles
  *Deputy Attorney General*

Office of the Georgia
Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3236
lwinkles@law.ga.gov
Counsel for amicus curiae

City of Atlanta v. Baker, No. 23-12469

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Ashe III, Robert L. (Counsel for Appellant)

Baker, Lisa (Appellee)

Bondurant, Mixon & Elmore, LLP (Counsel for Appellant)

Carr, Christopher M. (Georgia Attorney General and Counsel for amicus curiae)

City of Atlanta (Appellant)

Cohen, Mark H. (United States District Judge)

Defend Atlanta Forest (Interested Association of Persons)

Dougherty, Jacqueline (Appellee-Plaintiff)

Filipovits, Jeff (Counsel for Appellees)

Law Offices of Gerry Weber, LLC (Law Firm Counsel for Appellees)

Jones, Keyanna (Appellee-Plaintiff)

Patel, Alkesh B. (Counsel for amicus curiae)

Petrany, Stephen J. (Counsel for amicus curiae)

Sellers, Matthew R. (Counsel for Appellant)

Smith, Wingo (Counsel for Appellees)

Spears, Brian (Counsel for Appellees)

City of Atlanta v. Baker, No. 23-12469

Spears & Filipovits, LLC (Law Firm Counsel for Appellees)

State of Georgia (Amicus Curiae)

Stop Cop City Coalition (Interested Association of Persons)

Vincent, Jane D. (Counsel for Appellant)

Weber, Gerald (Counsel for Appellees)

Weltner, Amelia (Appellee-Plaintiff)

Winkles, Logan B. (Counsel for Amicus Curiae)


/s/ *Logan B. Winkles*
Logan B. Winkles

# TABLE OF CONTENTS

**Page**

Table of Authorities .......................................................................... v

Interest of amicus curiae ................................................................. 1

Statement of the Case..................................................................... 2

Argument ......................................................................................... 4

    I.  The district court erred in addressing constitutional issues
without first addressing the validity of the petition. ........... 4

        A.  Under Georgia law, the petition is invalid. .................... 5

        B.  The district court should have rejected Appellees'
request on the clear basis that their petition is invalid. 9

    II. The district court's injunction exceeded what was necessary
to remedy any purported harm. ........................................ 12

Conclusion...................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Biddulph v. Mortham*,
  89 F.3d 1491 (11th Cir. 1996) .................................................. 13

*Bryan v. Georgia Public Servs. Comm'n*,
  238 Ga. 572 (1977)........................................................................ 5

*Burns v. Town of Palm Beach*,
  999 F.3d 1317 (11th. Cir. 2021) .............................................. 10

*Camden County v. Sweatt*,
  315 Ga. 498 (2023)............................................................3, 7, 14

*Cheffer v. Reno*,
  55 F.3d 1517 (11th Cir. 1995) .................................................. 11

*City of Brookhaven v. City of Chamblee*,
  329 Ga. App. 346 (2014) ............................................................. 5

*Club Madonna, Inc. v. City of Miami Beach*,
  924 F.3d 1370 (11th Cir. 2019) ................................................ 10

*CSX Transportation, Inc. v. City of Garden City*,
  277 Ga. 248 (2003)........................................................................ 5

*Financial Info. Techs., LLC v. Icontrol Sys. USA, LLC*,
  21 F.4th 1267 (11th Cir. 2021)................................................. 12

*Franklin County v. Fieldale Farms Corp.*,
  270 Ga. 272 (1998)........................................................................ 8

*Galvez v. Jaddou*,
  52 F.4th 821 (9th Cir. 2022)..................................................... 15

*Gonzalez v. Governor of Georgia*,
  978 F.3d 1266 (11th Cir. 2020) ................................................. 7

v

*H.G. Brown Family, L.P. v. City of Villa Rica,*
   278 Ga. 819 (2005).........................................................................1

*Harrell v. Florida Bar,*
   608 F.3d 1241 (11th Cir. 2010) ...............................................11

*Hospital Auth. Of Wayne County v. AmerisourceBergen*
   *Drug Corp.,*
   --- Ga. ----, 2023 WL 5337867 (Aug. 21, 2023) ...........................5

*Jones v. Markiewicz-Qualkinbush,*
   892 F.3d 935 (7th Cir. 2018) ...................................................13

*Keener v. Convergys Corp.,*
   342 F.3d 1264 (11th Cir. 2003) ...............................................12

*Kelly v. Marietta,*
   253 Ga. 579 (1984).....................................................................6

*Kemp v. City of Claxton,*
   269 Ga. 173 (1998)..........................................................*passim*

*Lyng v. Northwest Indian Cemetery Protective Ass'n,*
   485 U.S. 439 (1988) ............................................................4, 10

*PVC Windoors, Inc. v. Babbitbay Beach Construction,*
   *N.V.,*
   598 F.3d 802 (11th Cir. 2010) ...................................................9

*Ruiz v. Estelle,*
   679 F.2d 1115 (5th Cir. 1982) .................................................15

*Siegel v. LePore,*
   234 F.3d 1163 (11th Cir. 2000) ...............................................11

**Statutes and Municipal Codes**

Atlanta Municipal Code § 66-37.................................................2, 6

O.C.G.A. § 36-35-1 *et seq.* ...........................................................5

O.C.G.A. § 36-35-3 ................................................................*passim*

**Other Authorities**

Ga. Const. art. III, § I, ¶ I................................................................ 5

Ga. Const. art. IX, § II, ¶ 1 ........................................................ 6, 14

## INTEREST OF AMICUS CURIAE

This appeal illustrates the importance of judicial restraint. Rather than applying clear Georgia Supreme Court precedent to a state law question that would have resolved this case, the district court instead addressed a constitutional question about an invalid ballot referendum petition. And rather than issue a narrowly tailored injunction, the district court instead upended the ballot petition process midstream and rewrote legislatively-determined deadlines that have been in place for decades.

Not only does the State of Georgia have an interest in seeing that the principles of judicial restraint are properly adhered to, the district court enjoined a city ordinance that exists only through a delegation of legislative authority from the State and its General Assembly. Cities in Georgia have no inherent power; they "may only exercise power to the extent it has been delegated authority by the state." *H.G. Brown Family, L.P. v. City of Villa Rica*, 278 Ga. 819, 820 (2005). The district court erroneously enjoined a city ordinance enacted through the express delegation of authority from the State, and that injunction directly impacts the State and its political subdivisions.

## STATEMENT OF THE CASE

In September 2021, the city council in Atlanta passed an ordinance that authorized the mayor to lease city-owned property to build a public safety training center.  Nearly two years later, opponents of the safety training center sought to put the question of that lease to the voters through a ballot referendum petition initiated under Atlanta's petition ordinance, *see* Atlanta Municipal Code § 66-37.  The petition ordinance follows state law in requiring that each petition contain a place for the person collecting signatures to "swear that such person is a resident of the city and that the signatures were collected inside the boundaries of the city."  *See generally* O.C.G.A. § 36-35-3(b)(2)(C); Atlanta Municipal Code § 66-37(b).

While the petition was being circulated, Appellees, four non-residents of the City of Atlanta, filed this action, alleging that the residency requirement barred them from collecting signatures in violation of their constitutional rights.  But the ballot petition itself is invalid under Georgia law because it seeks to change a *city ordinance*.  In Georgia, city ballot referendum petitions "appl[y] only to amendments to municipal charters" and not to city

ordinances like the one being challenged here. *Kemp v. City of Claxton*, 269 Ga. 173, 176 (1998).[1]

Rather than reject Appellees' arguments on that plain, obvious basis, the district court ruled that the validity of the referendum was somehow "not ripe for decision." Doc. 26 at 23. The district court did not explain how a dispositive issue that entirely moots Appellees' complaint could be "not ripe." *Id.* The district court went on to hold that the residency requirement violated the First Amendment rights of signature collectors. *Id.* at 24. But the district court did not stop there; instead, it also ordered the City to extend the statutorily-imposed deadline to accept signatures. *Id.* at 30-31.

The City appealed to this Court and now asks it to undo this unwarranted intrusion into state and local affairs. The City further moved this Court for a motion to stay the injunction and a motion to expedite the appeal.

---

[1] The rule in Georgia is different for counties because counties derive their home rule power, in part, from the Georgia Constitution. *See generally Camden County v. Sweatt*, 315 Ga. 498, 506 (2023). *Kemp*, however, remains binding precedent as applied to cities. *See id.* at 512.

# ARGUMENT

## I. The district court erred in addressing constitutional issues without first addressing the validity of the petition.

Under Georgia law, a ballot referendum petition that seeks to overturn a city ordinance—rather than a provision of the city charter—is invalid. *Kemp*, 269 Ga. at 176. The district court explicitly acknowledged as much. Doc. 26 at 23. Nevertheless, the district court erroneously determined that the validity of the petition was not ripe and so leapt to the constitutional question of whether the residency requirement violated the First Amendment. That determination flipped the "fundamental and longstanding principle of judicial restraint [that] requires the courts to avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 225 (1988). And because the petition itself is invalid under current Georgia law, there is not even a valid case or controversy regarding the constitutionality of the petition ordinance. The district court's order is essentially a hypothetical and advisory opinion.

4

### A.   Under Georgia law, the petition is invalid.

The Georgia Constitution provides that the legislative power of the State is vested exclusively in the General Assembly.  Ga. Const. art. III, § I, ¶ I.  The "inherent powers of the General Assembly are plenary.  Unlike the United States Congress, which has only delegated powers, the Georgia legislature is given full lawmaking powers."  *Bryan v. Georgia Public Servs. Comm'n*, 238 Ga. 572, 573 (1977).

But the Georgia Constitution also authorizes the General Assembly to delegate some of its legislative authority to cities.  *City of Brookhaven v. City of Chamblee*, 329 Ga. App. 346, 348 (2014).  This is important because cities, as creatures of the State, "cannot exercise powers except those granted to them by the State."  *CSX Transportation, Inc. v. City of Garden City*, 277 Ga. 248, 249 (2003).  The General Assembly also has the "authority to expand, diminish, or withdraw the powers granted to such an entity."  *Hospital Auth. Of Wayne County v. AmerisourceBergen Drug Corp.*, --- Ga. ----, S23Q0486, 2023 WL 5337867 at *8 (Aug. 21, 2023).

The General Assembly delegated some of its legislative authority to cities through the Municipal Home Rule Act of 1965.  O.C.G.A. § 36-35-1 *et seq*.  Municipalities gained the "legislative

power to adopt clearly reasonable ordinances, resolutions, or regulations relating to [their] property, affairs, and local governments."[2] O.C.G.A. § 36-35-3(a).

The Municipal Home Rule Act also specifically authorized cities to enact ordinances allowing for ballot referendum petitions. O.C.G.A. § 36-35-3. The City of Atlanta properly exercised that authority in passing the petition ordinance. The petition ordinance mirrors the Municipal Home Rule Act, as it must, and provides that petitioners seeking to change the city charter must garner the signatures of fifteen percent of "the electors registered to vote in the last general municipal election" within sixty days after the city clerk approves the petition as to form. O.C.G.A. § 36-35-3(b)(2); Atlanta Municipal Code § 66-37(b). The City of Atlanta lacks the authority to allow for ballot referendum petitions outside of this express authority granted by the General Assembly. *See generally Kelly v. Marietta*, 253 Ga. 579 (1984) ("Towns and cities have only such powers as are granted to them by the State.") (internal citations omitted).

---

[2] In contrast to cities, which obtain legislative authority from the General Assembly, counties derive much of their authority from the Georgia Constitution itself. *See, e.g.,* Ga. Const. art. IX, § II, ¶ 1.

In *Kemp*, the Georgia Supreme Court held that ballot referendum petitions initiated under O.C.G.A. § 36-35-3(b) are limited to changes to a city charter.  *Kemp*, 269 Ga. at 176.  In that case, the City of Claxton enacted an ordinance closing a railroad crossing.  Several residents subsequently sought a ballot referendum petition from the city clerk who refused to comply on the ground that any petition under O.C.G.A. § 36-35-3(b) was limited to amendments to the city charter.  The trial court granted a writ of mandamus ordering the clerk to issue the ballot petition, but the Georgia Supreme Court reversed and held that the "petition procedure of O.C.G.A. § 36-35-3(b)(2) applies only to amendments to municipal charters."  *Id.*

As the district court noted, the reasoning in *Kemp* was questioned by the Georgia Supreme Court in *Camden County*.  315 Ga. at 512.  But the *Camden County* Court also held that, despite any possible reservations, "we are construing a completely separate legal provision, [so] the holding in *Kemp* does not control our decision in this case, and we need not consider at this time whether *Kemp* should be overruled. . . ." *Id.*  *Kemp* remains binding precedent, and it is the definitive understanding of Georgia law for this Court.  *See Gonzalez v. Governor of Georgia*,

7

978 F.3d 1266, 1271 (11th Cir. 2020).  Indeed, the district court recognized as much.  Doc. 26 at 23.

In the district court, Appellees did not argue that *Kemp* is not good law.  Instead, they argued that an independent basis for the petition exists under § 2-501(a) of City of Atlanta charter, which provides that the city council "shall by ordinance prescribe procedures to govern the initiation, adoption, and repeal of ordinances."  Doc. 21 at 12.

But § 2-501(a) of the Atlanta charter does not and could not (without violating Georgia law) create an alternative to the ballot referendum process contained in O.C.G.A. § 36-35-3.  As the Georgia Supreme Court noted, "Municipal Home rule power is a delegation of the General Assembly's legislative power to the municipalities." *Kemp*, 269 Ga. at 176.  The only way that the General Assembly has delegated that authority to conduct ballot referendum petitions is through O.C.G.A. § 36-35-3.  Section 2-501(a) does not conflict with or create an alternative to O.C.G.A. § 36-35-3, nor could it.  *See generally Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272, 275 (1998) (noting that Georgia Constitution precludes local or special laws when general laws exist on the same subject).

In sum, under binding Georgia law, the petition at issue in this appeal, which was brought under the petition ordinance and O.C.G.A. § 36-35-3(b), is legally invalid.

### B. The district court should have rejected Appellees' request on the clear basis that their petition is invalid.

Rather than address the petition's validity under binding, dispositive state law, the district court determined that such an issue was not yet ripe.  Doc. 26 at 23.  So the district court jumped to the constitutional issue and determined that the residency requirement in the petition ordinance violated the non-resident petitioners' First Amendment rights.  *Id.* at 30.  But that makes no sense. The validity of the petition is a pure question of law (and an obvious one) that makes any other legal holding entirely unnecessary.  The district court provided no reasoning for its conclusion that this issue was unripe, and this Court should stay the preliminary injunction on this basis alone.

It is blackletter law that "federal courts are duty bound to avoid a constitutional question if answering the question is unnecessary to the adjudication of the claims at hand."  *PVC Windoors, Inc. v. Babbitbay Beach Construction, N.V.*, 598 F.3d 802, 807 (11th Cir. 2010). Put another way, "[a] fundamental and

9

longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng*, 485 U.S. at 445. Courts "don't answer constitutional questions that don't need to be answered." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1348 (11th Cir. 2021).

This very basic principle of law—which the district court ignored, on the basis of its unsupported ripeness holding—makes this an easy case. The district court should have held, and this Court should hold, that the preliminary injunction is unjustified because the entire petition is clearly invalid.

The district court did not engage in any meaningful analysis about ripeness. Doc. No. 26 at 23-24. If it had, it likely would have come to a different conclusion. In determining whether an issue is ripe, courts evaluate "(1) the fitness of the issues for judicial decision and (2) the hardships to the parties of withholding court consideration." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019). "If a claim is fit for judicial decision, that is the end of the inquiry, and the matter is ripe, given that the absence of a 'hardship' cannot tip the balance against judicial review." *Id.* Although the invalidity of the petition is fit for judicial review, both factors favor ripeness.

10

As to the first factor, a claim is fit for judicial determination if it can be decided as a pure legal matter and without further factual development. *See Harrell v. Florida Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010). Here, the validity of the petition is purely a legal issue and there is no further factual determination necessary; the petition is invalid as a matter of law under *Kemp*. As to the second factor, both parties, but especially the City of Atlanta, suffer litigation and practical hardships because the district court refused to address the validity of the petition. Because the district court did not answer that fundamental question, the City is forced to appeal and expend the cost to review and count potentially thousands of signatures for a petition that is invalid as a matter of law. *See generally Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) ("Potential litigants suffer substantial hardship if they are forced to choose between foregoing lawful activity and risking substantial legal sanctions.")

But even if there were some question as to ripeness in the abstract, this is not a final decision, it was a preliminary injunction. A "preliminary injunction is an extraordinary and drastic remedy," never granted as a matter of course. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). It is overwhelmingly inequitable to enter a preliminary injunction

11

where it is entirely unnecessary because the petition itself is invalid.

This Court should reverse the district court's order on this basis alone.

## II.  The district court's injunction exceeded what was necessary to remedy any purported harm.

The district court's preliminary injunction also reaches too far.  An "injunction must be narrowly tailored to the proven legal violations and restrain no more conduct than reasonably necessary." *Financial Info. Techs., LLC v. Icontrol Sys. USA, LLC*, 21 F.4th 1267, 1280 (11th Cir. 2021).  A district court commits reversible error when it issues a preliminary injunction that is not narrowly tailored to fit the specific legal violations adjudicated.  *See Keener v. Convergys Corp.*, 342 F.3d 1264, 1269-70 (11th Cir. 2003).  Here, the district court's injunction was overbroad and, rather than narrowly addressing the harm, completely rewrote policy choices made by the State of Georgia and its General Assembly in its delegation of legislative authority to municipalities.

The district court held that the petition ordinance likely violates the First Amendment by imposing a residency requirement on those individuals seeking to collect signatures.

12

Doc. 26 at 17.  Even assuming that determination was correct, the appropriate, narrow injunction would have ordered the City to permit Appellees and other nonresidents to collect signatures using the forms without the residency verification.  And while that was part of the district court's order, it was only part.  The district court went on to extend the "sixty-day statutory period for the collection of signatures." *Id.* at 30–31.  So not only did the district court permit an invalid petition to proceed, it also gave the groups supporting the petition additional time, beyond that permitted by Georgia law to collect signatures.   This remedy goes beyond what was required to address the harm and has sown confusion directly in the middle of a political campaign.  *See generally* Brief of City of Atlanta at 13-15.

This is particularly true in the context of a ballot referendum petition because there is no federal constitutional right to such a process.  *See Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 937 (7th Cir. 2018) (collecting cases); *Biddulph v. Mortham*, 89 F.3d 1491, 1500 n.10 (11th Cir. 1996) ("[T]he right to place an initiative on the ballot is a right created by the State.").  Nor does the Georgia Constitution provide a right to ballot referendum

petitions for cities and municipalities.[3]  Instead, the entire process exists because the General Assembly saw fit to give a limited delegation of legislative authority to cities.  But those "home rule provisions were adopted against a backdrop of a state legislature with a reputation for being stridently opposed to implementing home rule provisions."  *Camden County*, 315 Ga. at 518 (Bethel, J., concurring dubitante).

Likely because of that hostility to home rule provisions, the General Assembly imposed a number of limitations on ballot referendum petitions, including the length of time in which petitions could be collected.  Specifically, under both Georgia law and the petition ordinance, petitions "shall not be accepted by the governing authority for verification if more than 60 days have elapsed since the date the sponsor of the petition first obtained copies of the petition from the clerk of the governing authority."  O.C.G.A. § 36-35-3(b)(2)(C).  The district court simply ignored that reasonable policy choice of the State of Georgia and usurped its legislative prerogatives by extending the deadline by five weeks.

---

[3] The Georgia Constitution *does* provide for ballot referendum petitions related to county—as opposed to municipal—actions. *See* Georgia Const. art. IX, § II, ¶ 1(b).

14

As virtually all courts have noted, the importance of crafting a narrowly tailored injunction is particularly true where, as here, the injunction impacts a State. *See, e.g.*, *Galvez v. Jaddou*, 52 F.4th 821, 834 (9th Cir. 2022) ("[S]pecific tailoring is particularly important [where] injunctive relief is granted against a state agency or official.") (internal citations omitted). And as the Fifth Circuit noted, "the principles of federalism which play such an important part in governing the relationship between federal courts and state governments are applicable where injunctive relief is sought." *Ruiz v. Estelle*, 679 F.2d 1115, 1145 (5th Cir. 1982). While the district court's injunction here was directed toward the City of Atlanta and not the State, the injunction's effect was to materially alter how legislative authority is delegated within the State. The extension of the deadline to accept petitions was overbroad and should be reversed.

15

## CONCLUSION

For the reasons set out above, this Court should reverse the judgment of the district court.

Respectfully submitted.

/s/ *Logan B. Winkles*
Christopher M. Carr
  *Attorney General of Georgia*
Stephen J. Petrany
  *Solicitor General*
Logan B. Winkles
  *Deputy Attorney General*

Office of the Georgia
Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3236
lwinkles@law.ga.gov
Counsel for amicus curiae

16

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 3770 words as counted by the word-processing system used to prepare the document.

/s/ *Logan B. Winkles*
Logan Winkles

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2023, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

/s/ *Logan B. Winkles*
Logan B. Winkles