Case No. 23-12469

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

───────────────────────────────────────────────

CITY OF ATLANTA,

Appellant-Defendant,

v.

LISA BAKER, JACQUELINE DOUGHERTY, KEYANNA JONES, and AMELIA WELTNER,

Appellees-Plaintiffs.

───────────────────────────────────────────────

Appeal from the United States District Court
for the Northern District of Georgia

### APPELLEES' RESPONSE IN OPPOSITION TO
### CITY OF ATLANTA'S MOTION TO STAY

G. Brian Spears
Georgia Bar No. 670112

Jeff Filipovits
Georgia Bar No. 825553

Wingo Smith
Georgia Bar No. 147896

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, GA 30030
404-905-2225

Gerald Weber
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
404-522-0507
wgerryweber@gmail.com

*Baker et al. v. City of Atlanta*
Case No. 23-12469

# CERTIFICATE OF INTERESTED PERSONS

The undersigned certified that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1. Ashe III, Robert L.
2. Atlanta Police Foundation, Inc.
3. Baker, Lisa
4. Bondurant, Mixson & Elmore, LLP
5. City of Atlanta
6. Cohen, Mark H.
7. Defend the Forest
8. Dougherty, Jacqueline
9. Filipovits, Jeff
10. Law Offices of Gerry Weber, LLC
11. Jones, Keyanna

C-1 of 2

*Baker et al. v. City of Atlanta*
Case No. 23-12469

12. Patel, Alkesh B.

13. Sellers, Matthew R.

14. Smith, Wingo

15. Spears, G. Brian

16. Spears & Filipovits, LLC

17. State of Georgia

18. Stop Cop City Coalition

19. Vincent, Jane D.

20. Weber, Gerald

21. Weltner, Amelia

22. Winkles, Logan B.

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

The City's motion to stay is predicated on a misrepresentation of the date of the potential upcoming election. The City argues that if enough valid petition signatures are collected it could be required to place the referendum on the November 2023 ballot. This is false. Under the current deadline, even if a sufficient number of valid signatures are collected, and the City approves the referendum petition, the earliest possible time the referendum could be placed on the ballot is March 2024 under state law.

But even that date is unlikely because the City has consistently stated that it will not approve the referendum under any circumstances. *See* Doc. 15 at 19 (arguing that "the proposed referendum here is invalid and/or a nullity, and it cannot be placed on the ballot"); Doc. 29 at 5 ("The petition Plaintiffs wish to circulate is a nullity because a referendum seeking to repeal a city ordinance is invalid . . . ."); *Id.* at 29 ("If the supporters garner enough signatures . . . the city council . . . will have no choice under *Kemp* but to reject the petition.").

If the City's representations in the district court are true, then *Purcell* does not apply because there will be no election (absent further protracted litigation).[1]

---

[1] The City also raised this issue when arguing that Plaintiffs have not suffered an irreparable harm by being excluded from collecting signatures, arguing that the effort was futile. This argument completely ignores the First Amendment issue in this case which involves the ability to participate in circulation of petitions, and assumes that the City's view will prevail in future litigation. The district court found that the issue was simply not ripe for adjudication because it remains an

The City repeatedly represented that it will refuse to approve the referendum petition even if the requisite signatures are collected and no vote will occur. Thus, the next stage of the referendum process will be litigation in state court concerning the validity of the referendum.

The City defended against Plaintiffs' motion for an injunction by arguing only that no injunction should be issued and failed to address or challenge the scope of the relief sought by Plaintiffs. The City now presents new arguments it never raised below, but none provide a basis to depart from the district court's well-reasoned order.

I.   **Standard of Review**

This Court reviews a district court's decision to deny a stay for abuse of discretion, "reviewing de novo any underlying legal conclusions and for clear error any findings of fact." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019).

---

open question whether a sufficient number of signatures will be collected. Moreover, Plaintiffs are not organizers of the referendum effort and the City has not sought to join any indispensable party. Finally, the City never even attempted to file any affirmative litigation on the novel state law issues they now ask this Court to consider, and instead issued the referendum petition.

## II. *Purcell* does not apply

### a. The City waived its *Purcell* argument by failing to raise it in the district court

The district court did not have the opportunity to address the City's *Purcell* argument because the City completely failed to raise it in its motion to stay. *See* Doc. 29. The City did not argue there was an impending November 2023 (which, as explained below, is not the correct date) election. The only reference the City made to *Purcell* in the district court was a passing reference in its response opposing the motion for preliminary injunction. *See* Doc. 15 at 22 (arguing in a single paragraph only that *Purcell* counsels against an injunction because twenty-three of the sixty-day signature collection period had already passed but failing to raise the purported November 2023 election date). This passing reference is not sufficient to preserve the issue for review. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (passing references are insufficient to raise an issue for appeal).

The City's failure to raise the issue mirrors *Rose v. Sec'y, State of Georgia*, No. 22-12593, 2022 WL 3572823, at *2 (11th Cir. Aug. 12, 2022), *vacated sub nom. Rose v. Raffensperger*, 143 S. Ct. 58 (2022), where the court initially held that the defendant did not waive the application of *Purcell* because he had raised "*Purcell*-type" arguments in response to the motion for an injunction, raised

Page 3 of 15

*Purcell* issues at trial, and the district court considered *Purcell* when crafting its relief. Judge Rosenbaum dissented and would have found that the defendant waived any *Purcell* argument. *Id.* at 13 (Rosenbaum, J., dissenting).

The Supreme Court vacated the court's decision and remanded the case for reconsideration because the Eleventh Circuit erroneously applied the *Purcell* standard.[2] The Court found that "respondent could not fairly have advanced [*Purcell*] himself in light of his previous representations to the district court" and therefore remanded the case for reconsideration. *Rose v. Raffensperger*, 143 S. Ct. 58, 59 (2022).[3]

Unlike the defendant in *Rose* who raised *Purcell* in multiple different contexts in the district court, the City did not raise the *Purcell* its opposition to Plaintiffs' injunction or in its motion to stay in the district court. And like the defendant in *Rose*, the City took a position in the district court (i.e., that it would not approve the referendum) that is inconsistent with the application of *Purcell*.

---

[2] There does not appear to be any subsequent history in this Court following the Supreme Court's remand of the case.
[3] *But see League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 n.4 (11th Cir. 2022) (expressing doubt as to whether the *Purcell* principle is subject to the ordinary rules of waiver).

### b. *Purcell does not apply because there is no impending election*

Even if *Purcell* applies to a pre-election referendum process, *Purcell* only counsels against an injunction that is "close to an election." *League of Women Voters of Florida, Inc. v. Florida Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022)). *See also Robinson v. Ardoin*, 37 F.4th 208, 228 (5th Cir. 2022) ("The classic *Purcell* case . . . concerns an injunction entered days or weeks before an election—when the election is already underway.").

There is no election underway here. The referendum sponsors have not returned the signed petitions yet, which is the first step in the process. The deadline for the return of the petitions is September 25, 2023. Under the City's ordinance, "the council shall determine the validity of such petition within 50 days of its filing." Atl. Mun. Code § 66-37(a). That means that the City has until November 14, 2023, to determine whether the petition is valid.

The actual election date is controlled by O.C.G.A. § 21-2-540(c)(2) which requires a call for the election to be issued at least 29 days before the election date. *Id*. The next possible election date is November 7, 2023. *Id*. That means the call for the November 7, 2023, election must be made by October 4, 2023. Otherwise, the election will be delayed until March 2024.

If the City's deadline to review the petitions is November 14, then the referendum will not be placed on the November 7 ballot.[4] The only possible way for the referendum to be on the November ballot is if the City expedites the process and removes its threatened roadblocks including: (1) reversing its position that the referendum is not valid; (2) expedites its approval process from the proscribed 50 days; (3) approves the referendum; and (4) immediately calls the election before October 4, 2023. The City has not presented any evidence that it will do any of these four items; instead, it has doubled down on its position that it will not approve the petitions and prevent any referendum vote.

The timing here is far afield from the "eve of an election" that *Purcell* contemplates. *Jacksonville Branch of NAACP v. City of Jacksonville*, 22-13544, 2022 WL 16754389, at *2 (11th Cir. Nov. 7, 2022). No controlling case has ever extended the *Purcell* rationale to an election more than six months away. *Compare Purcell v. Gonzalez*, 549 U.S. 1 (2006) (injunction staying enforcement of voter ID law issued between two weeks to twenty-nine days before the election); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020)

---

[4] The referendum was always likely to be on the March ballot unless city council decided to expedite its review and the call of the election. The Clerk first issued official ballots on June 22, 2023. The original sixty-day deadline ended on August 21, 2023. Fifty days after August 21, 2023, is still October 10, 2023, nearly a week after the deadline to call the election.

(staying injunction issued five days before the election that extended the deadline to mail absentee ballots); *Andino v. Middleton*, 141 S. Ct. 9 (2020) (staying injunction prohibiting single-witness rule for absentee ballots less than two months before the election); with *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (staying injunction barring Alabama's redistricting scheme issued by the district court nine weeks before an election); *Grace, Inc. v. City of Miami*, 23-12472, 2023 WL 5286232 (11th Cir. Aug. 4, 2023) (staying injunction of city's redistricting plan three months before an election).[5]

This Court previously wrote that less than four months was the inner part of the outer bounds of *Purcell* where the injunction implicated voter registration, which had already begun, and the relief would have required the state to retrain poll workers. *League of Women Voters of Florida, Inc. v. Florida Sec'y of State*, 32 F.4th 1363 (11th Cir. 2022). And in an unpublished opinion, it refused to recognize five months as sufficiently "close at hand." *City of Jacksonville*, 22-13544, 2022 WL 16754389, at *2 (11th Cir. Nov. 7, 2022). Staying an injunction where the

---

[5] The majority of these cases involved the constitutionality of state voting laws in national elections when applied during the COVID-19 pandemic. As Judge Kavanaugh noted, "[t]his Court has consistently stated that the Constitution principally entrusts politically accountable state legislatures, not unelected federal judges, with the responsibility to address the health and safety of the people during the COVID–19 pandemic." *Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28, 32 (2020).

mere possibility of an election is more than six months away exceeds this Court's application of *Purcell*, and this Court should decline to extend it further. *See In re Georgia Senate Bill 202*, 1:21-CV-01229-JPB, 2023 WL 5334617, at *14 (N.D. Ga. Aug. 18, 2023) (declining to apply *Purcell* to bar injunctive relief when the election was over six months away).

### c. *Purcell does not apply because the district court's injunction does not change the rules of an election*

The City argues that *Purcell* applies to the signature collection process and relies on *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020). But *Little* does not apply or even cite *Purcell*.[6] Ignoring that it is not even a *Purcell* case, the City nevertheless argues that the facts here "align nearly perfectly" with *Little*. *See* App. Doc. 14 at 14.

In *Little*, the plaintiffs sued Idaho during the COVID-19 pandemic and argued that the state's referendum law that required in-person signatures and certain deadlines violated the First Amendment. The district court granted the injunction and fundamentally altered the referendum statute. It went so far as to authorize "the sponsor to join with a third-party vendor to develop and implement

---

[6] In *Little*, the Supreme Court stayed an injunction but only produced a concurrence joined by four justices. It did not produce a majority opinion and the Court ultimately did not grant certiorari. There is no way to determine why a majority of the Court issued the stay.

a new online system over the course of nine days" to collect digital signatures.

This case does not involve a challenge to the collection of in-person signatures, nor did the district court fundamentally alter the method by which signatures are collected. The only change the district court made to the referendum law was to allow non-residents to collect signatures and to extend the deadline to provide a collection process untainted by the First Amendment violation. The Supreme Court's stay is silent as to *Purcell*, and Chief Justice Roberts' concurring opinion expressed skepticism that the signature requirement violated the First Amendment. *See id.* at 2617 (Roberts, J.J., concurring).[7]

### d. The Purcell *factors do not warrant a stay*

Even if the Purcell factors apply, they do not warrant a stay. The City argues that Plaintiffs' success is not clear cut. While the City is correct that there is no binding Eleventh Circuit precedent on this issue, it is wrong that there is a "circuit

---

[7] The district court cases cited by the City are also irrelevant. *See* App. Doc. 14 at 14 n.16. In *Arizonans for Fair Elections v. Hobbs*, 454 F. Supp. 3d 910, 926 (D. Ariz. 2020), the court held that the plaintiffs did not establish a substantial likelihood of success on the merits on a First Amendment challenge to an in-person signature requirement. It mentioned *Purcell* only in passing. In *Fair Maps Nevada v. Cegavske*, 463 F. Supp. 3d 1123, 1148 (D. Nev. 2020), the court invoked *Purcell* when it found that five months were not enough time to roll out and test a new electronic system for signature collection and verification. The court also declined to issue an injunction because it found that the plaintiffs' challenge to an in-person signature requirement survived strict scrutiny. Neither establishes that *Purcell* applies here.

split." App. Doc. 14 at 19. This is an apparent reference to a decision from the Eighth Circuit which held that a statewide residency restriction survived strict scrutiny because it furthered the state's interest in protecting against fraud. *See Initiative & Referendum Institute v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001). As the district court found, the City only advanced "its right to self-governance as its legitimate interest and [made] no argument that the residency restriction on signature gatherers somehow protects against petition fraud." *See* Doc. 26 at 13 n.7. Moreover, every other circuit to consider the issue has also applied strict scrutiny, and struck down laws less restrictive than the one at issue here.[8]

The City's claim that it will be irreparably harmed by the injunction strains credulity. The extension of time places no additional burden on the City, and in

---

[8] *See, e.g.*, *Pierce v. Johnson*, 44 F.4th 853, 861 (9th Cir. 2022) (holding that Montana's requirement that initiative petition signature gatherers be state residents "imposes a severe burden on the First Amendment rights of both out-of-state residents and in-state proponents and is therefore subject to strict scrutiny"); *We The People PAC v. Bellows*, 40 F.4th 1, 14 (1st Cir. 2022) (holding that Maine's requirement that petition circulators be state residents is a severe burden on political speech subject to strict scrutiny); *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008) ("[S]trict scrutiny is the correct legal standard under which to analyze Oklahoma's ban on non-resident circulators."). Courts have reached the same result when analyzing rules concerning residency restrictions for statewide candidate petitions. *See Wilmoth v. Sec'y of New Jersey*, 731 F. App'x 97, 103 F.3d Cir. 2018); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 317 (4th Cir 2013); *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 146 (2d Cir. 2000); *Krislov v. Rednour*, 226 F.3d 851, 860-61 (7th Cir. 2000). There is no "circuit split."

fact, gives it more time to put in place its verification process. The information required on the petitions, *see* Doc. 33-1 at 2, allows the City to determine the date the signatures were collected and the name and address of each circulator. If the need arises, there will be no issue identifying non-resident circulators and the date signatures were collected.

The City also asserts that the injunction requires it to depart from state law. But "[i]t is hornbook federal law that the authority of a 'federal court to fashion effective relief for a violation of federal law is not limited by what state law permits.'" *Reeves v. Comm'r, Alabama Dep't of Corr.*, 23 F.4th 1308, 1319 (11th Cir.) (quoting *Smith v. Comm'r AL Dept. of Corr.*, 2021 WL 4817748, at *4 (11th Cir. Oct. 15, 2021)). State law cannot supersede the federal constitution nor this Court's constitutional authority to redress an ongoing constitutional violation.[9]

The City also argues that Plaintiffs delayed filing this lawsuit, but Plaintiffs

---

[9] This Circuit has also recognized that local governments can be held liable for money damages arising from enforcing an unconstitutional statute. *See Barnett v. MacArthur*, 956 F.3d 1291, 1298 (11th Cir. 2020) (holding that a sheriff could be held liable for enforcing an unconstitutional policy even if that policy was consistent with, or mandated by, a state statute). *See also Cooper v. Dillon*, 403 F.3d 1208, 1222–23 (11th Cir. 2005) (holding that a city could be liable for enforcing an unconstitutional policy, even though the policy was consistent with a Florida statute, because the statute itself was unconstitutional). Similarly, the fact that the City may be acting pursuant to a state statute does not justify its violation fo the First Amendment.

—who are not organizers of the referendum effort—filed this lawsuit within two weeks of the City approving the referendum petition and issuing petition forms.[10] Any lawsuit prior to the approval of the petition would have been premature. This Circuit has never found that that two weeks is an undue delay. *See Grace, Inc. v. City of Miami*, 23-12472, 2023 WL 5286232, at *2 (11th Cir. Aug. 4, 2023) (deciding eleven-month delay was too long under *Purcell*); *and see also Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (district court did not abuse its discretion in deciding that five-month delay was fatal to finding of imminent irreparable harm); *see also In re Georgia Senate Bill 202*, 1:21-CV-01229-JPB, 2023 WL 5334617, at *12 (N.D. Ga. Aug. 18, 2023) (finding that plaintiffs' delay in requesting injunctive relief balanced between the immediacy of irreparable harm and the "narrow window" in which *Purcell* permits injunctive relief).

---

[10] The City states that one of Plaintiffs' counsel was "intimately involved" in getting the petition approved by the municipal clerk. The implication appears to be that Plaintiffs are therefore responsible for the fact that the City approved a petition form with more restrictive language than the statute required. The City made this argument in a surreply that it did not seek leave of court to file. *See* Doc. 24. The district court found that there was "not much that assists the the Court in resolving" the preliminary injunction motion, and only acknowledged one unrelated argument in its order *See* Doc. 26 at 8 n.4, 18.

The City does not identify and legal or ethical issue related to that attorney's prior work, nor does it disclose to the Court that the City's counsel had been retained to represent the Clerk during the period in which the petitions were submitted and approved.

### III. The City cannot meet any of the traditional factors governing a stay pending appeal

The City's argument in favor of a stay in the district court did not raise *Purcell* and relied entirely on the *Nken* factors. The City now appears to have abandoned any arguments on the normal factors for a stay instead relies entirely on *Purcell*.

To whatever extent the City continues to advance the arguments made in the district court, those arguments are waived, unavailing and do not meet the "heavy burden" required for "extraordinary relief."[11] *See Winston-Salem/Forsyth Cnty. Brd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971). The district court well-reasoned order sets forth the basis for rejecting those arguments. The City does not repeat them here and Plaintiffs defer to the district court's analysis in its order denying the City's motion for stay. *See* Doc. 34.

### IV. Conclusion

For the foregoing reasons, Plaintiffs request that the City's motion to stay be denied.

---

[11] When *Purcell* does not apply, this Court applies the traditional *Nken* factors to determine whether a stay is warranted. *See Jacksonville Branch of NAACP v. City of Jacksonville*, 22-13544, 2022 WL 16754389, at *3 (11th Cir. Nov. 7, 2022) (noting that "we decline to apply *Purcell* and instead utilize our traditional factors for reviewing motions to stay").

Submitted this 29th day of August, 2023.

/s/Brian Spears
Brian Spears
Georgia Bar No. 670112

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

/s/Wingo Smith
Wingo Smith
Georgia Bar No. 147896

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, GA 30030
404-905-2225
bspears@civil-rights.law
jeff@civil-rights.law
wingo@civil-rights.law

/s/Gerald Weber
Gerald Weber
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
(404) 522-0507 (phone)
wgerryweber@gmail.com

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 3,408 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using LibreOffice 7.4.5.1 in 14 point Times New Roman font.