Case No. 23-12469

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

CITY OF ATLANTA,
Appellant-Defendant,

v.

LISA BAKER, JACQUELINE DOUGHERTY, KEYANNA JONES, and AMELIA WELTNER,
Appellee-Plaintiffs.

_____

Appeal from the United States District Court
for the Northern District of Georgia

**APPELLANT CITY OF ATLANTA'S REPLY IN SUPPORT OF ITS MOTION TO STAY**

Robert L. Ashe
Jane D. "Danny" Vincent
Matthew R. Sellers

BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree St. NE, Suite 3900
Atlanta, GA 30309
404-881-4100

*Attorneys for Appellant-Defendant City of Atlanta*

Case No. 23-12469
City of Atlanta v. Baker

**<u>CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT</u>**

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, the following trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations are known or believed to have an actual or potential interest in the outcome of this case or appeal:

- Ashe III, Robert L. (Counsel for Appellant)

- Baker, Lisa (Appellee-Plaintiff)

- Bondurant, Mixson & Elmore, LLP (Law Firm Counsel for Appellant)

- City of Atlanta (Appellant-Defendant)

- Cohen, Mark H. (United States District Judge – Northern District of Georgia)

- Defend Atlanta Forest (Interested Association of Persons)

- Dougherty, Jacqueline (Appellee-Plaintiff)

- Filipovits, Jeff (Counsel for Appellees)

- Law Offices of Gerry Weber, LLC (Law Firm Counsel for Appellees)

- Jones, Keyanna (Appellee-Plaintiff)

- Patel, Alkesh B. (Counsel for Former Defendant and Trial Court Amicus State of Georgia)

- Sellers, Matthew R. (Counsel for Appellant)

C-1 of 2

- Smith, Wingo (Counsel for Appellees)

- Spears, Brian (Counsel for Appellees)

- Spears & Filipovits, LLC (Law Firm Counsel for Appellees)

- State of Georgia (Former Defendant and Amicus)

- Stop Cop City Coalition (Interested Association of Persons)

- Vincent, Jane D. (Counsel for Appellant)

- Weber, Gerald (Counsel for Appellees)

- Weltner, Amelia (Appellee-Plaintiff)

- Winkles, Logan. B. (Counsel for Former Defendant and Trial Court Amicus State of Georgia)

The City of Atlanta is a municipality created by the State of Georgia and thus has no parent corporations or publicly traded corporations to disclose.

Appellant the City of Atlanta ("City") files this reply in support of its motion to stay the district court's preliminary injunction. The Appellants-Plaintiffs' arguments against the relief the City seeks are all misplaced. The City raised *Purcell* in the district court; March 2024 is not the relevant date for applying *Purcell*; Plaintiffs ignore the harms to the City caused by changing the rules in the middle of a political process; and Plaintiffs can't now use *Kemp* to avoid the application of *Purcell*.

There are functionally two approaches for evaluating the propriety of preliminary injunction at this point: (1) the referendum is invalid under *Kemp* and therefore the preliminary injunction should never have been granted because there is no irreparable injury in denying Plaintiffs the right to attest to where signatures were collected on an invalid petition, or (2) *Kemp* does not apply and the City faces imminent decisions in the petition process and potentially issuing a call for the referendum to be placed on the ballot. <u>At the latest</u>, the deadline for the City Council to call for a referendum is November 21, 2023. But November 21—and potentially even earlier—puts this case squarely under *Purcell*. Under either scenario, the injunction should be stayed: it is inappropriate under *Kemp*, inappropriate under *Purcell*, or inappropriate under both.

1

### I.   The City did not waive the *Purcell* argument.

Plaintiffs misrepresent the City's *Purcell* arguments in the district court. While the City cited *Purcell* in one paragraph, the entire third section of the brief, about the balance of equities, was dedicated to the argument that federal courts should not interrupt state political processes that are already underway.[1] In this same section, the City cited and discussed *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363 (11th Cir. 2020)—which turns on *Purcell*—twice, as well as *New Ga. Project v. Raffensberger*, 976 F.3d 1278 (11th Cir. 2020), which relied on *Purcell* to stay an injunction in a case filed six months before the next election.[2] Courts in this circuit regularly treat *Purcell* as part of the balance of equities, as the City did. *See, e.g.*, *VoteAmerica v. Raffensberger*, 609 F. Supp. 3d 1341, 1367 (N.D. Ga. 2022). This is far from being a passing reference.  Nor did the district court consider it passing as it addressed the City's *Purcell* argument on the merits.[3]

---

[1] Doc. 15 at 19–20. "Doc." shall refer to the District Court docket number, and "11th Cir. Doc" shall refer to filings in this appeal.  All page citations are to the pagination affixed by the electronic filing system.

[2] *Id*. The complaint for injunctive and declaratory relief in *New Georgia Project v. Raffensberger* was filed on May 8, 2020, 179 days before the election on November 3. Complaint, Case No. 1:20-CV-1986, Docket 1 (N. D. Ga. May 8, 2020).

[3] Doc. 26 at 25–26.

2

In addition, the waiver issue in Plaintiffs' case, *Rose v. Sec'y, State of Georgia*,[4] is far afield from the facts here. In *Rose*, the complaint was filed in July 2020, the district court denied the motion to dismiss in January 2021, and the case proceeded to discovery. *Id*. at 4–5 (J. Rosenbaum, dissenting). The parties then jointly proposed a scheduling order, "noting the November 8, 2022, election," that contemplated filing summary judgment motions in the summer of 2021. *Id*. at 5 At no point during these proceedings or scheduling process did the Secretary of State raise any *Purcell* concerns. *Id*. The parties submitted their summary judgment briefing in July 2021 and the district court issued its rulings in January 2022. *Id*. The court found there were some remaining issues of fact and set the case for a bench trial. *Id*. Again, the parties submitted a joint schedule to the court, this time agreeing that the court would issue its ruling "no later than August 15, 2022." *Id*. The court entered this scheduling order on February 3, 2022 without objection. *Id*. Only after this scheduling order was entered did the Secretary of State first raise *Purcell*. *Id*. But the secretary's conduct in *Rose* goes even farther: the secretary **conceded** that he would not appeal based on *Purcell*: "I would want to note for the record for [Appellees' counsel] that we may appeal based on the merits, but we won't make an appeal based on *Purcell*

---

[4] No. 22-12593, 2022 WL 3572823, at *6 (11th Cir. Aug. 12, 2022), *vacated sub nom. Rose v. Raffensperger*, 143 S. Ct. 58 (2022).

3

so we can at least get that put down. If we get to that point. I wanted to make that clear." *Id*. at 6. The waiver issue in *Rose* simply does not touch on the facts here.

## II.   *Purcell* applies and Plaintiffs cannot meet its test.

As discussed above, March 2024 is not the appropriate date. Plaintiffs state with undue certainty that the referendum could not be placed on the November ballot—but they concede they have no control over this process. Their counsel disclaimed that they are the petition sponsors (11th Cir. Doc 31 at 14–15), and they therefore have no authority to speak for when the petition might be submitted to the City. And, of course, Plaintiffs have no control over how quickly the City will be able to verify signatures, and therefore cannot speak to that timing, either. Thus, there are dates other than the actual election that matter for this process, namely the seven-day deadline for the City to decide whether to call for a referendum. The political process at issue here—the one interrupted by the preliminary injunction—is the petition process, which will be complete no later than November 21, 2023, and potentially much earlier. This "[l]ate judicial tinkering" is precisely the problem *Purcell* instructs federal courts to avoid. *Merrill v. Milligan*, 142 S.Ct. 879, 880–81 (2020) (Kavanaugh, J., concurring).

Because *Purcell* applies, Plaintiffs must meet a higher burden than the traditional preliminary injunction test. *Id*. at 880. In particular, Plaintiffs cannot

demonstrate that their right to attest that the signatures were collected within the City limits is "entirely clearcut," that they would suffer irreparable harm without the injunction,[5] and that the mid-process changes do not cause significant cost and confusion.[6] *Id*. at 881; *see also League of Women Voters*, 32 F.4th at 1372 (adopting a "heightened" standard for a preliminary injunction under *Purcell*).

First, Plaintiffs' alleged First Amendment right is not "entirely clearcut" because Plaintiffs are simply wrong about the circuit split. They try to distinguish the Eighth Circuit case, *Initiative & Referendum Institute v. Jaeger*, 241 F.3d Cir. 614 (8th Cir. 2001), on the grounds that the City did not allege fraud as a basis for the residency verification requirement, but that is just wrong. The City has repeatedly defended the requirement as necessary to "protect the integrity and reliability of the initiative process." *See., e.g.,* Doc 15 at 5 (quoting *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 191 (1999)). "Integrity and reliability" encompass several interests, and necessarily include preventing fraud.

Second, the right is not "entirely clearcut" because the U.S. Supreme Court has "uniformly recognized that a government unit may legitimately restrict the right

---

[5] This factor is discussed below in section III, which considers the traditional preliminary injunction test.

[6] These factors are presented in the conjunctive, so Plaintiffs must prove all of them. *See Merrill*, 142 S.Ct. at 881.

to participate in its political processes to those who reside within its borders." *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 68–69 (1978). While Plaintiffs try to distinguish this clear directive as relating only to elections, the Supreme Court has said otherwise: government units have the same right to "protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Buckley*, 525 U.S. at 191.

    Third, the right is not "entirely clearcut" because the residency verification requirement at issue here is different than every other requirement considered by federal courts. Unlike the circulator laws at issue in Plaintiffs' circuit court cases that required a resident to engage in the one-on-one communication to gather signatures, the City's ordinance—and the authorizing state statute—do not interfere with any "interactive communication." *See Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). Properly read, the petition ordinance merely requires a City resident to attest that signatures were collected inside the City limits—an attestation the resident can make without ever soliciting passersby to sign the petition, or speaking to anyone at all. Because any burden imposed by this requirement is "light" and "counterbalanced" by the "state interests supporting the ballot access scheme," it is "presumptively valid." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992).

Finally, the injunction creates confusion around the ballot initiative because the petition is now out of compliance with state law. As the State of Georgia explained in its briefing, the City has no authority to use a petition process that is not expressly authorized by state statute:

> A fundamental principle of Georgia law is that municipalities, like the city of Atlanta, are creatures of the State and derive whatever power and authority they have from the legislative grace of the State. [cit]. And because municipalities are creatures of the State, they "possess only those powers that have been expressly or impliedly granted to them" by the State.[7]

And because any delegation of these powers "must be strictly construed," the district court did not have the authority—under state law—to strike only part of the ordinance. *H.G. Brown Family, LP v. City of Villa Rica*, 278 Ga. 819, 820 (2005). The ordinance rises and falls as whole, and by striking only the residency verification, the district court created substantial confusion about the validity of the petition signatures.

### III. Even under the traditional factors, the preliminary injunction should be stayed.

Plaintiffs argue that *Purcell* does not apply if, as the City contends, the referendum is void under *Kemp v. City of Claxton*, 269 Ga. 173 (1998), because that

---

[7] Doc. 16 at 13 (citing *Common Cause of Georgia v. City of Atlanta,* 279 Ga. 400, 402 (2005) and *Porter v. City of Atlanta*, 259 Ga. 526 (1989)).

7

would mean there is no imminent election. First, that is just wrong—*Purcell* is concerned with "[l]ate judicial tinkering" in state election processes, not whether the referendum meets the requirements to be placed on the ballot. *Merrill*, 142 S.Ct. 879 at 880–81. For example, the referendum could also fail to make the ballot because the final number of valid signatures is below the statutory threshold—but no one would argue that scenario warrants abandoning *Purcell*.

Second, Plaintiffs' argument undermines the issuance of the injunction in the first instance: there can be no irreparable injury if the residency requirement is not the reason the Plaintiffs cannot place the initiative on the ballot. The First Amendment right at issue the petition referendum context is the "restrict[ion] of political expression." *Meyer*, 486 U.S. at 422–23. But the political expression the Supreme Court is concerned about is not the individual right to speak with others about the subject matter of the petition—clearly the residency verification requirement does not prevent anyone from talking to whomever they want about the referendum. *Id*. Instead, the Court has explained that limitations on petition circulators "restrict[] political expression" when the restriction unreasonably limits the size of the audience the petition supporters can reach and thus makes it less likely the petition will get on the ballot. *Id*. Of course, whether the residency verification imposes a severe burden on this political expression is a question on the merits that

8

will remain for the district court to decide. But that is not the appropriate question for a preliminary injunction.

In this posture, the question is irreparable harm—which Plaintiffs cannot show because the referendum is void on its face under binding Georgia Supreme Court precedent. As this Court explained in affirming the denial of an injunction, "Clearly, [initiative proponents] can claim no constitutionally-protected right to place issues before the Florida electorate; any opportunity to do so must be subject to compliance with state constitutional requirements." *Gibson v. Firestone*, 741 F.2d 1268, 1271–73 (11th Cir. 1984). Because the initiative in *Gibson* violated Florida's single-subject rule, this Court held the proponents were not entitled to an injunction because the injunction would not remedy the harm. So it is here—any harm to the likelihood of the referendum getting on the ballot is not remedied by this injunction because the referendum violates Georgia law.

***

This Court should apply *Purcell* given the imminent deadlines the City faces in this referendum process, but even without the heightened burden imposed by *Purcell*, this Court should stay the injunction because Plaintiffs cannot show irreparable harm.

9

Respectfully submitted this 31st day of August, 2023.

>/s/Robert L. Ashe III
>Robert L. Ashe III
>Georgia Bar No. 208077
>ashe@bmelaw.com
>Jane D. Vincent
>Georgia Bar. No. 350850
>vincent@bmelaw.com
>Matthew R. Sellers
>Georgia Bar No. 691202
>sellers@bmelaw.com
>Bondurant, Mixson & Elmore, LLP
>1201 W. Peachtree Street, NW
>Atlanta, GA  30309
>(404) 881-4100 – Telephone
>
>*Attorneys for the City of Atlanta*

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this motion does not exceed 5,200 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on August 31, 2023.

*/s/ Robert L. Ashe III*
Robert L. Ashe III
Georgia Bar No. 208077

# CERTIFICATE OF SERVICE

I certify that, on August 31, 2023, I served a copy of this **APPELLANT CITY OF ATLANTA'S REPLY IN SUPPORT OF ITS MOTION TO STAY** by filing a copy with the Court's CM/ECF system, which will automatically serve a copy on counsel of record by email.

*/s/ Robert L. Ashe*
Robert L. Ashe III
Georgia Bar No. 208077