No. 23-12469-H

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

———————

LISA BAKER, et al.

*Plaintiffs/Appellees*,

v.

CITY OF ATLANTA,

*Defendant/Appellant.*

———————

Appeal From The United States District Court
For The Northern District Of Georgia
1:23-cv-2999-MHC

———————

**APPELLEES' SUPPLEMENTAL BRIEF**

———————

| | |
|---|---|
| Spears & Filipovits, LLC | Law Offices of Gerry Weber, LLC |
| 315 W. Ponce de Leon Ave., Ste. 865 | Post Office Box 5391 |
| Decatur, GA 30030 | Atlanta, Georgia 31107 |
| 404-905-2225 | 404-522-0507 |

C-1 of 2<br>
*Baker et al. v. City of Atlanta*<br>
23-12469-H

# **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to 11th Cir. R. 26.1, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and any other identifiable legal entities related to a party:

1. Ashe III, Robert L.
2. Atlanta Police Foundation, Inc.
3. Baker, Lisa
4. Bondurant, Mixson & Elmore, LLP
5. City of Atlanta
6. Cohen, Mark H.
7. Defend the Forest
8. Dougherty, Jacqueline
9. Filipovits, Jeff
10. Law Offices of Gerry Weber, LLC
11. Jones, Keyanna

C-2 of 2  
*Baker et al. v. City of Atlanta*  
23-12469-H

12. Patel, Alkesh B.

13. Sellers, Matthew R.

14. Smith, Wingo

15. Spears, G. Brian

16. Spears & Filipovits, LLC

17. State of Georgia

18. Stop Cop City Coalition

19. Vincent, Jane D.

20. Weber, Gerald

21. Weltner, Amelia

22. Winkles, Logan B.

Pursuant to Eleventh Circuit Rule 26.1-3(b), the undersigned hereby certifies that no publicly-traded company or corporation has an interest in the outcome of the above-captioned case or appeal.

/s/Jeff Filipovits  
Jeff Filipovits  
Georgia Bar No. 825553

# TABLE OF CONTENTS

Table of Citations..................................................................................................ii

Argument and Citation of Authority.......................................................................1

    1. Plaintiffs' injury is redressable by a judgment
       against the City of Atlanta.......................................................................3

       a. The City is solely responsible for enforcing
          the residency restriction..................................................................3

       b. The City cannot continue to follow an
          unconstitutional statute....................................................................6

Conclusion.............................................................................................................9

Certificate of Compliance....................................................................................11

# **TABLE OF CITATIONS**

Cases

*City of S. Miami v. Governor*,
    65 F.4th 631 (11th Cir. 2023)..............................................................4, 5

*Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*,
    351 F.3d 1112 (11th Cir. 2003)..............................................................1

*Jacobson v. Fla. Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020).........................................................3, 4

*Lerman v. Board of Elections in City of New York*,
    232 F.3d 135 (2nd Cir. 2000)..................................................................1

*Lewis v. Governor of Alabama*,
    944 F.3d 1287 (11th Cir. 2019).........................................................4, 5

*Quinones v. City of Evanston*,
    58 F.3d 275 (7th Cir. 1995)....................................................................5

*Trump v. Int'l Refugee Assistance Project*,
    582 U.S. 571 (2017)................................................................................8

Statutes

O.C.G.A. § 9-4-7...............................................................................5 n.4

O.C.G.A. § 36-35-3.................................................3, 5 n.4, 7 & nn.8–10

Ordinances

Atl. Mun. Code § 2-501.....................................................................6 n.7

Atl. Mun. Code § 66-37..................................2, 3 & n.7, 6, 7 n.10

## **ARGUMENT AND CITATION OF AUTHORITY**

This brief is filed in response to the Court's request for the parties to address whether Plaintiffs have standing and, specifically, whether Plaintiffs' injuries would be redressed by a judgment against the City of Atlanta. *See* App. Doc. 63. The answer to both questions is yes.

Standing under Article III consists of three elements: (1) a particularized concrete actual or imminent injury; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir. 2003).

The Court's request focuses on the issue of redressability, which Plaintiffs address below. Plaintiffs address the remaining elements briefly at the outset.

First, Plaintiffs' inability to circulate the referendum petition is a concrete and particularized injury under the First Amendment.[1] The opinion in *Lerman v.*

---

[1] Plaintiffs' injury is also ongoing. While the Plaintiffs' rights to collect signatures have been vindicated because the City changed the attestation on the referendum petitions to allow non-residents to collect signatures, their rights are not fully vindicated if their efforts are not treated the same as residents in the validation process as well. *See Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) (recognizing that equal protection rights are "closely intertwined with First Amendment interests," and that it violates the First Amendment and equal protection clause to treat speech by different speakers differently). The

1

*Board of Elections in City of New York*, 232 F.3d 135, 142–43 (2nd Cir. 2000), contains a cogent analysis of this issue and found that a nomination petition circulator who resided outside a candidate's district had standing to challenge a residency restriction.

Second, Plaintiffs' inability to engage in petition circulation is caused by the City's enforcement of its own ordinance, which prohibits non-resident participation in circulation. *See* Atl. Mun. Code § 66-37(b) ("The municipal clerk shall provide a place on each form for the person collecting signatures […] to swear that such person is a resident of the city and that the signatures were collected inside the boundaries of the city."); Doc. 1 ¶¶ 46-49 (detailing the municipal clerk's rejection of a prior petition because the residency restriction in § 66-37 was not on the petition).

The remainder of this brief focuses on redressability.

---

district court order (beyond equalizing treatment for non-residents in the signature gathering process) effectuated full relief by changing the referendum deadline to give non-residents the full statutory timeframe to exercise their first amendment rights and have the signatures they gather treated equally. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

2

### 1.  *Plaintiffs' injury is redressable by a judgment against the City of Atlanta*

#### a.  *The City is solely responsible for enforcing the residency restriction*

Two laws are at issue: the Home Rule Act, O.C.G.A. § 36-35-3,[2] and Atl. Mun. Code § 66-37.[3] Under both laws, the City of Atlanta is solely responsible for issuing referendum petitions, canvassing and certifying the results, and placing the issue on the ballot. No state official plays any role in the referendum process.

This Court's precedent shows that a plaintiff challenging the constitutionality of a statute must seek relief against the party charged with enforcing the process under the statute. For example, in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020), voters sued the Florida Secretary of State and contested the constitutionality of a Florida statute that dictated the sequence in which candidates' names were to be presented on ballots. The court held that the plaintiffs' injury was not traceable to the Secretary of State because, while the Secretary had the duty of giving the list of nominated candidates to the supervisor,

---

[2] Under O.C.G.A. § 36-35-3(b)(2), it is the duty of the municipal clerk to approve and issue referendum petitions the duty of the "governing authority of each municipal corporation" to canvas the returns of a referendum petition, and to certify the results.

[3] *See* Doc. 1-1. Under Atl. Mun. Code § 66-37, it is sole responsibility of the City for determining the validity of a petition and calling a special election.

3

it otherwise had no authority over the placement of the candidates' names and no role in enforcing the statute. *Id.* That duty, instead, belonged to local election supervisors who were not parties to the lawsuit. *Id.* The court held the plaintiffs lacked standing because a judgment against the Secretary of State would not redress the plaintiffs' alleged injury.

Likewise, in *City of S. Miami v. Governor*, 65 F.4th 631, 644 (11th Cir. 2023), the plaintiffs sued the Florida Governor and Attorney General, challenging the constitutionality of a statute requiring local law enforcement agencies to assist federal authorities in enforcing federal immigration law. The court held that plaintiffs lacked standing because there was no proof that "the governor or attorney general has enforced or threatened to enforce" the law. Because the law only regulated local law enforcement, the plaintiffs' alleged injury did not stem from any state official. *See also Lewis v. Governor of Alabama*, 944 F.3d 1287 (11th Cir. 2019) (finding that the plaintiffs could not seek an injunction against the state attorney general where the attorney general lacked enforcement authority).

These precedents also establish that a state official's residual enforcement authority is insufficient to confer standing. *See Jacobson*, 974 F.3d at 1254 ("That the Secretary must resort to judicial process if the Supervisors fail to perform their

4

duties underscores her lack of authority over them."); *Lewis*, 944 F.3d at 1300 (finding that an attorney general's power to "to institute and prosecute, in the name of the state, all civil actions and other proceedings necessary to protect the rights and interests of the state" insufficient to confer standing); *South Miami*, 65 F.4th at 642 (finding a governor's power to sue local official to enforce compliance with the law, coupled with the governor's ability to suspend local officials who refuse to enforce the law were insufficient to confer standing).

Based on these precedents, Plaintiffs could not have sued the Governor, Secretary of State, Attorney General, or any other Georgia official because the City of Atlanta is the sole entity responsible for enforcing the law surrounding the referendum.[4] The City must be the only defendant. *Cf. Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995) ("[A] person aggrieved by the application of a legal rule does not sue the rule *maker*—Congress, the President,

---

[4] Plaintiffs also initially named the State of Georgia as a defendant. *See* Doc. 1. Plaintiffs did so to ensure the State had adequate notice of the lawsuit, *see* O.C.G.A. § 9-4-7(c) (requiring notice to the Attorney General if a party challenges the constitutionality of a statute), and the opportunity to defend the constitutionality of O.C.G.A. § 36-35-3 if it desired. The State responded by invoking Eleventh Amendment immunity—specifically arguing that no injunctive relief could be entered against it. *See* Doc. 16 at 5–6. Given that the State declined its opportunity to participate in the lawsuit Plaintiffs moved to drop the State as a party. *See* Doc. 22, 23.

5

the United States, a state, a state's legislature, the judge who announced the principle of common law. He sues the person who acts to hurt him.") (emphasis supplied).

### b.  The City cannot continue to follow an unconstitutional statute

As this Court recognized when framing the redressability issue,[5] the City has argued that the district court did not enjoin O.C.G.A. § 36-35-3 and that it, therefore, remains duty bound under state law to violate the First Amendment.[6]

One explanation for why the district court did not enjoin O.C.G.A. § 36-35-3 was that it believed that Atl. Mun. Code § 66-37(b) sets out a separate referendum process from the one in O.C.G.A. § 36-35-3. *See* Doc. 26 at 23 (noting that the City of Atlanta Charter[7] appears to authorize petitions for referendum elections to repeal ordinances, but ultimately finding the issue was not ripe for adjudication). If

---

[5] *See* App. Doc. 63 at 2.

[6] *See* App. Doc. 16 at 38 (arguing "the district court did not enjoin a state law containing an identical residency requirement . . . meaning the City's petition process (as rewritten by the district court) is out of compliance with state law").

[7] *See* Doc. 21-1, Atl. Mun. Code§ 2-501.

that is the case, there was no need to enjoin the statute because the Home Rule Statute was not the source of the City's authority.[8]

Another explanation is that the failure to cite O.C.G.A. § 36-35-3 is merely a technical oversight. It is obvious that the district court found both the statute and ordinance violated the First Amendment because the constitutional infirmity is identical. The district court even went so far as to analyze the severability of the statutory language. *See* Doc. 26 at 28. Moreover, Plaintiffs' complaint[9] and preliminary injunction motion[10] each sought to declare O.C.G.A. § 36-35-3 unconstitutional.

---

[8] The City makes the contrary argument and contends that O.C.G.A. § 36-35-3 is enabling legislation for local referendum ordinances. *See* App. Doc. 57 at 13. But even if the ordinance is dependent on the statute, that argument does not help the City. The Supreme Court has observed that if "act merely authorizes further legislative action to be taken by the city . . . [it] is that municipal action, not the statute of a state, whose 'enforcement, operation, or execution' the petitioner seeks to enjoin." *Ex parte Collins*, 277 U.S. 565, 569 (1928). And more recently, the Court observed that "ordinarily would not matter whether a plaintiff was challenging the statute's enforcement or instead the enforcement of a regulation and, in doing so, raising arguments about the validity of the statute that authorized the regulation." *F.E.C. v. Cruz,* 596 U.S. 289, 300 (2022).

[9] *See* Doc. 1 at 14 (requesting the court declare the residency restriction under O.C.G.A. § 36-35-3(b)(2)(C) unconstitutional).

[10] *See* Doc. 2 ¶ 16 (requesting the court enter an order prohibiting the enforcement of both O.C.G.A. § 36-35-3 and Atl. Mun. Code § 66-37).

Regardless of the reason, the City cannot continue enforcing a state law laden with an identified violation of the First Amendment.[11] The First Amendment controls over the state law to the contrary.

The district court similarly has the authority to order the City to depart from other provisions of the referendum laws when redressing a violation of the First Amendment. "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017). For example, courts routinely extend statutory voting and registration deadlines when redressing a constitutional violation. *See, e.g.*, *United States v. Georgia*, 892 F. Supp. 2d 1367 (N.D. Ga. 2012); *United States v. Georgia*, 892 F. Supp. 2d 1367, 1376 (N.D. Ga. 2012); *United States v. Georgia*, 892 F.

---

[11] In the district court, the City argued that complying with the injunction would require it to act ultra vires. That is a misuse of the term. An ultra vires act is an act taken in the total absence power and there is a "broad distinction . . . between an irregular exercise of a granted power, and the total absence or want of power." *Quillian v. Employees' Retirement System of Ga.*, 259 Ga. 253, 379 S.E.2d 515 (1989). Here, the district court's order requires the City to treat non-residents efforts in the signature gathering process the same as those of residents both in allowing them to collect signatures by changing the attestation on the referendum petitions and allowing non-residents to collect signatures, giving non-residents the full prescribed time to gather signatures, and in requiring the counting the valid signatures gathered by non-residents.

8

Supp. 2d 1367, 1377 (N.D. Ga. 2012); *Georgia Coal. for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344 (S.D. Ga. 2016); *Florida Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016).

The district court has considerable discretion in determining how to vindicate an ongoing constitutional violation, and extending the deadline to collect signatures was the minimally intrusive means of ensuring that non-residents had an equal opportunity and were not excluded from the signature gathering process.

## **CONCLUSION**

Plaintiffs sought injunctive relief against the City so they could circulate petitions for the referendum. The City's enforcement of the residency restriction caused plaintiffs' injury, and an injunction against the City was the only way to vindicate Plaintiffs' First Amendment rights. Plaintiffs meet all Article III standing requirements, and this Court has subject matter jurisdiction over this case.

[Signatures appear on the following page.]

Respectfully submitted, this 4th day of December, 2023.

/s/Brian Spears
Brian Spears
Georgia Bar No. 670112

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

/s/Wingo Smith
Wingo Smith
Georgia Bar No. 147896

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, GA 30030
404-905-2225
bspears@civil-rights.law
jeff@civil-rights.law
wingo@civil-rights.law

/s/Gerald Weber
Gerald Weber
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
404-522-0507
wgerryweber@gmail.com

**CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies that this document complies with the 15 double spaced page limitation imposed by this Court's order. *See* App. Doc. 63 at 2.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface in 14-point Times New Roman font. The brief was prepared using LibreOffice 7.4.5.1 and GNU Emacs 28.3

This 4th day of December, 2023.

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

Spears & Filipovits, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, Georgia 30306
404-905-2225
jeff@civil-rights.law