Case No. 23-12469

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

CITY OF ATLANTA,
Appellant-Defendant,

v.

LISA BAKER, JACQUELINE DOUGHERTY, KEYANNA JONES, and AMELIA WELTNER,
Appellee-Plaintiffs.

_____

Appeal from the United States District Court
for the Northern District of Georgia

**APPELLANT CITY OF ATLANTA'S SECOND SUPPLEMENTAL BRIEF**

Robert L. Ashe
Jane D. "Danny" Vincent
Matthew R. Sellers

BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree St. NE, Suite 3900
Atlanta, GA 30309
404-881-4100

*Attorneys for Appellant-Defendant City of Atlanta*

Case No. 23-12469
City of Atlanta v. Baker

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, the following trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations are known or believed to have an actual or potential interest in the outcome of this case or appeal:

- Ashe III, Robert L. (Counsel for Appellant)
- Baker, Lisa (Appellee-Plaintiff)
- Bondurant, Mixson & Elmore, LLP (Law Firm Counsel for Appellant)
- City of Atlanta (Appellant-Defendant)
- Cohen, Mark H. (United States District Judge – Northern District of Georgia)
- Defend Atlanta Forest (Interested Association of Persons)
- Dougherty, Jacqueline (Appellee-Plaintiff)
- Filipovits, Jeff (Counsel for Appellees)
- Law Offices of Gerry Weber, LLC (Law Firm Counsel for Appellees)
- Jones, Keyanna (Appellee-Plaintiff)
- Patel, Alkesh B. (Counsel for Former Defendant and Trial Court Amicus State of Georgia)
- Sellers, Matthew R. (Counsel for Appellant)

C-1

- Smith, Wingo (Counsel for Appellees)

- Spears, Brian (Counsel for Appellees)

- Spears & Filipovits, LLC (Law Firm Counsel for Appellees)

- State of Georgia (Former Defendant and Amicus)

- Stop Cop City Coalition (Interested Association of Persons)

- Vincent, Jane D. (Counsel for Appellant)

- Weber, Gerald (Counsel for Appellees)

- Weltner, Amelia (Appellee-Plaintiff)

- Winkles, Logan. B. (Counsel for Former Defendant and Trial Court Amicus State of Georgia)

The City of Atlanta is a municipality created by the State of Georgia and thus has no parent corporations or publicly traded corporations to disclose.

## INTRODUCTION

Per the Court's Order of February 10, 2025, Appellant-Defendant the City of Atlanta ("City") submits this supplemental brief to request that the Court dismiss this appeal as moot and vacate the district court's preliminary injunction.

Appellees Lisa Baker, Jacqueline Dougherty, Keyanna Jones, and Amelia Weltner ("Petitioners") brought this action to "oppose[] the construction of" the City's Public Safety Training Center[1]—a new, modern facility the City sorely needed to train its police, firefighters, and first responders. Specifically, Petitioners sought an injunction against a City ordinance that they say barred them, as non-residents of the City, from collecting signatures for a petition to hold a citizen referendum.[2] The proposed referendum would ask City voters whether to repeal Atlanta Ordinance 21-O-0367 (the "ground lease ordinance"), which authorized the City Mayor to execute a lease for the site of the Public Safety Training Center with the Atlanta Police Foundation.[3]

---

[1] Appellees' Resp. Br. at 15; *see also* Doc. 1 ¶¶ 18–36.

[2] Doc. 1 at 14. The City maintains that the ordinance does not prohibit Petitioners from collecting signatures, but merely requires a City resident to attest that the Petitioners (or others) collected the signature in the City limits. *See* Appellants' Opening Br. at 29–31. In other words, Petitioners could collect a signature, and a City resident could separately attest that Petitioners collected that signature in the City limits. The ordinance thus does not violate the First Amendment, as the City explained in its Opening Brief. *See id.*

[3] Doc. 1-3; Doc. 21-3 at 3.

1

Construction of the Public Safety Training Center is now substantially complete.[4] The Center opened in December 2024. City police, firefighters, and first responders have begun to train at the state-of-the-art facility. The Center's stables house City police horses and its kennels house K-9 units. Its trails are open to the public for walking and jogging. Any referendum on the ground lease ordinance will not remove the Center from the site or prevent its use by the City for these purposes. Substantial completion of the facility moots Petitioners' "challenge [to] the construction of a government project that will be built in the county in which they live."[5]

## ARGUMENT AND CITATION TO AUTHORITY

### I. Substantial completion of the Public Safety Training Center mooted this case.

"A cause of action becomes moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."[6] "[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be

---

[4] About Page, Atlanta Public Safety Training Center, available at: https://www.atltrainingcenter.com/about
[5] Appellees' Resp. Br. at 15.
[6] *Djadju v. Vega*, 32 F.4th 1102, 1106 (11th Cir. 2022) (quotation omitted).

dismissed."[7] Indeed, in such circumstances "dismissal is required because mootness is jurisdictional."[8] "In considering mootness, [the Court] look[s] at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued."[9]

The substantial completion of the Public Safety Training Center means the Court can no longer grant meaningful relief. Binding precedent from the old Fifth Circuit confirms a requested injunction against construction of a building becomes moot once "construction is completed."[10] Even if the Petitioners collected enough signatures to trigger a referendum, repeal of the ground lease ordinance would not remove the Public Safety Training Center from the site. Nor would repeal of the ground lease ordinance invalidate the lease to the Atlanta Police Foundation. As the City explained in its Opening Brief, the repeal of an authorizing ordinance cannot invalidate an executed lease under the Georgia Constitution's prohibition against the

---

[7] *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) (quotation omitted).

[8] *Id.* (quotation omitted).

[9] *Djadju*, 32 F.4th at 1106.

[10] *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1103 (5th Cir. 1981). In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

3

impairment of contracts.[11]  In other words, an *ex post facto* repeal of the authority to *execute* the lease cannot and does not *cancel or terminate* a long-ago executed lease.

Petitioners may contend the case is not moot because the lease terms give the City the option to terminate the ground lease with 180 days' notice.[12]  But repealing the ordinance authorizing the initial execution of the lease would not require the City to exercise this option.  And more to the point, the lease provides that the Public Safety Training Center buildings will revert to the City at the end of the lease term.[13]  The lease reflects the parties' intent for the Atlanta Police Foundation to construct the Public Safety Training Center and then "transfer back" the improvements to the City for "operation."[14]  The termination of the lease might accelerate that plan, but the ultimate outcome will remain the same: the City will own and train its first responders at the now completed facility.

Petitioners may claim that, notwithstanding the completion of construction, the case is not moot because the City could still hold a referendum.  Any such claim would be incorrect.  Georgia Supreme Court precedent restricts the petition and

---

[11] *See Jonesboro Area Athletic Ass'n v. Dickson*, 181 S.E.2d 852, 857 (Ga. 1971).
[12] *See* Ground Lease Agmt. § 4.3.  Petitioners requested to include the lease agreement in the appellate record.  The City has no objection to inclusion of the lease agreement in the record on appeal and has agreed to the authenticity of the lease attached to their supplemental brief.
[13] *See id*. § 4.4.
[14] *Id*. at 2.

referendum to amendments to city charters; Georgia cities cannot hold a referendum to enact or repeal an ordinance.[15] That precedent bars the referendum independently of the prohibition on nonresidents collecting petition signatures. The City's first supplemental brief explains why that independent bar means the Court cannot redress Petitioners' claim injury, and thus that Petitioners cannot establish standing.[16] The Court could dismiss the case for lack of standing without reaching mootness, because it "may address standing and mootness in whatever order [it] prefer[s]."[17]

Regardless, the case would still be moot even if Georgia law authorized the referendum because, again, repeal of the ground lease ordinance would not change the status quo. Petitioners do not want to hold a referendum for its own sake. The referendum was always in service of their goal to "challenge the construction" of the Public Safety Training Center.[18] But at this point, there can be no challenge to the Center's construction. Even if the Court affirmed and a referendum occurred, any

---

[15] *See Kemp v. City of Claxton*, 496 S.E.2d 712, 715 (Ga. 1998) ("[T]he petition and referendum provision is intended to be available only when the proposed amendment is intended to affect a city charter.").

[16] *See* Dkt. 68, Appellant City of Atlanta's Supp. Br. at 10-11 (Dec. 4, 2023); *see also Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1266 (11th Cir. 2019) ("[C]ases from our Circuit have concluded that a plaintiff's claims were not redressable because a different, unchallenged provision precluded relief.").

[17] *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1280 (11th Cir. 2024).

[18] Appellees' Resp. Br. at 15.

5

outcome of such a referendum would be merely academic at this point—the Center has been built and will not be torn down.

This inability to grant meaningful relief moots the case. This Court has recognized that cases can become moot even if a court could theoretically enter judgment, if the judgment would provide no real relief. In *South Miami Holdings, LLC v. FDIC*, for example, this Court held that an unsecured creditor of a bank could not proceed after the FDIC, the bank's receiver, determined the bank would never have assets to satisfy the claim.[19] "Because no assets remain in the receivership, nor will the receivership ever obtain assets necessary to satisfy a judgment in [the creditor's] favor, [the creditor's] claims against the FDIC as receiver for [the bank] are moot."[20] That same logic applies here. Even if a judgment led to a referendum—and if, *arguendo*, the Court could ignore that such a referendum would be illegal under Georgia law—the referendum could not advance Petitioners' stated goal of stopping construction of the already built facility.

Alternatively, even if the case is not moot in the Article III sense, the Court should dismiss as prudentially moot. The "doctrine of prudential mootness" allows the Court to "withhold relief it has the power to grant" if a "controversy … has become so attenuated that considerations of prudence and comity counsel the court

---

[19] 533 F. App'x 898, 903 (11th Cir. 2013) (unpublished).
[20] *Id.*

6

to stay its hand."[21]  Applying this doctrine, this Court declined to decide whether to vacate a satisfied foreign arbitral award, notwithstanding that "it is theoretically possible for a party who obtains a vacatur of an already-enforced and satisfied … award to return to the enforcing court and file some type of restitution action."[22]  The Court found it "extremely unlikely—if not impossible—" that the plaintiff could "undo[] the consequences of the final, unappealed (and fully satisfied) judgment."[23]

So too here.  Affirmance simply cannot and would not give the Petitioners what they want.  Georgia Supreme Court precedent poses an independent obstacle to holding the referendum at all.  And even if a referendum were held, its outcome would not demolish the Public Safety Training Center.  If the referendum is not technically moot, then the relief sought has surely become so attenuated that the Court should decline to decide the case as a matter of prudence.

## II. This case is not capable of repetition yet evading review.

The mootness doctrine's "narrow" exception for cases "capable of repetition yet evading review" does not apply.[24]  "That exception can be invoked only in the exceptional circumstance in which the same controversy will recur and there will be

---

[21] *Ingaseosas Int'l Co. v. Acongagua Inv. Ltd.*, 479 F. App'x 955, 964 (11th Cir. 2012) (unpublished) (quotation omitted and alteration adopted).
[22] *Id.* at 963.
[23] *Id.*
[24] *Soliman*, 296 F.3d at 1242.

7

inadequate time to litigate it prior to its cessation."[25] To meet that requirement, Petitioners would have to show both a "probability that the *same* controversy will recur involving the *same* complaining party" and that "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration."[26]

Neither requirement is met. Nothing suggests Petitioners intend to collect signatures for any future referendum petition about the Public Safety Training Center or anything else. The Court thus cannot conclude the controversy will likely soon recur.

And nothing indicates that Petitioners could not obtain relief in a future action if they did want to collect signatures for a new referendum petition. This case moved on an expedited basis. Petitioners filed their Complaint in July 2023; the appeal was fully briefed and this Court heard oral arguments by December 2023. That the case is now moot does not, by itself, show that Petitioners could not obtain relief in a future lawsuit. Petitioners opposed a specific construction project, which naturally had an end date. Not only that, Petitioners could have initiated this action much sooner. The City passed the ground lease ordinance that Petitioners hope to repeal in 2021, yet Petitioners did not sue until July 2023.

---

[25] *Id.* at 1243 (quotation omitted).
[26] *Id.* (quotation omitted).

Besides, not all referendum petitions will target time-limited action like this one did. Consider a petition for a referendum to eliminate a municipal hotel tax. The passage of time would not moot a lawsuit by nonresidents who sought to collect signatures in support of that petition, because the municipality would continue to collect the tax while the litigation proceeded. That demonstrates that a future case may present a live controversy on a timeline that would allow full litigation of the issues in this case.

The Court should decide whether nonresidents have a First Amendment right to collect signatures to force a referendum in a city where they do not live in a live case, when it can grant appropriate relief. This is no longer such a case.

### III. The Court should vacate the district court's injunction and dismiss the appeal as moot.

"When a case becomes moot on appeal, under controlling law the Court of Appeals must not only dismiss the case, but also vacate the district court's order."[27] "[T]he policy of vacating the underlying district court order is premised on the equitable principle that a party who seeks review of an adverse merits ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."[28] That is the proper remedy for prudential mootness as

---

[27] *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1340 (11th Cir. 2001).
[28] *Id.* (quotation omitted).

well.[29]  The correct disposition is thus to vacate the injunction and dismiss the appeal.

## CONCLUSION

The Court should vacate the district court's preliminary injunction and dismiss this appeal as moot due to the completion of the Public Safety Training Center.

Respectfully submitted this 24th day of February, 2025.

/s/ Robert L. Ashe III
Robert L. Ashe III
Georgia Bar No. 208077
ashe@bmelaw.com
Jane D. Vincent
Georgia Bar. No. 350850
vincent@bmelaw.com
Matthew R. Sellers
Georgia Bar No. 691202
sellers@bmelaw.com
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree Street, NW
Atlanta, GA 30309
(404) 881-4100 – Telephone

*Attorneys for the City of Atlanta*

---

[29] *See Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1045 (8th Cir. 2022) (vacating preliminary injunction based in part on prudential mootness).

# CERTIFICATE OF COMPLIANCE

This brief does not exceed the 20-page limit set by the Court's Order of February 10, 2025.

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on February 24, 2025.

> */s/ Robert L. Ashe III*
> Robert L. Ashe III
> Georgia Bar No. 208077

## **CERTIFICATE OF SERVICE**

I certify that, on February 24, 2025, I served a copy of this **APPELLANT CITY OF ATLANTA'S SECOND SUPPLEMENTAL BRIEF** by filing a copy with the Court's CM/ECF system, which will automatically serve a copy on counsel of record by email.

*/s/ Robert L. Ashe*
Robert L. Ashe III
Georgia Bar No. 208077